2004-NMCA-079

92 P.3d 1284

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Larry CEARLEY, Defendant–Appellant.**

**No. 23,707.**

Court of Appeals of New Mexico.

May 14, 2004.

Certiorari Denied, No. 28,722, June 24, 2004.

Certiorari Granted, No. 28,722, July 14, 2004.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

Lee DesChamps, DesChamps Law Firm, LLC, Socorro, NM, for Appellant.

*OPINION*

PICKARD, Judge.

{1} This case presents the question of whether an inauthentic document that has been presented to opposing counsel during discovery in a civil matter and that has no legal efficacy apart from its potential evidentiary value can be the subject of a forgery prosecution. Interpreting the forgery statute, NMSA 1978, § 30–16–10 (1963), and surveying pertinent case law, we hold that it cannot. Accordingly, we reverse Defendant's conviction for forgery. Defendant also appeals his conviction for attempted criminal fraud, contrary to NMSA 1978, § 30–16–6 (1987), arguing that (1) Defendant did not have the required specific intent, (2) Defendant had a valid defense of impossibility, (3) the State did not show reliance as the fraud statute requires, (4) the State did not show that Defendant attempted to take something of value as the fraud statute requires, and (5) the State cannot prosecute attempted fraud for actions that take place in the context of a judicial proceeding. Finding no merit in these arguments, we affirm Defendant's conviction for attempted fraud.

**FACTS AND PROCEEDINGS**

{2} Defendant was involved in a child support dispute in which his ex-wife contended that Defendant owed $3584 in back payments. Defendant was ordered to appear at a hearing to show cause why he should not be cited for contempt of court for failing to pay child support. Defendant argued that he had fulfilled his child support obligation by issuing checks to his ex-wife, but that she had never deposited them. In a hearing before the district court, Defendant's attorney told the court that he was prepared to offer the non-carbon records (NCRs) of twelve child support checks that Defendant had written to his ex-wife. Ex-wife's attorney responded that he would contact the bank directly and obtain official documentation of any payments made.

{3} After the hearing, Defendant's attorney delivered to ex-wife's attorney photocopies of NCRs that indicated the twelve payments to ex-wife, despite the fact that ex-wife's attorney had not wanted them. Ex-

wife's attorney contacted the bank to obtain information on the checks that matched the check numbers on the photocopied NCRs. Ex-wife's attorney discovered that the original checks with those numbers had been made out to different payees and for different amounts, meaning that Defendant had altered the NCRs in order to make the photocopies. Ex-wife's attorney turned over the photocopies to the police.

{4} Defendant was charged with twelve counts of forgery, contrary to Section 30–16–10. He was also charged with one count of attempted fraud over $2500, contrary to Section 30–16–6, based on the notion that he made misrepresentations with the intent to defraud his ex-wife of the amount of the child support owed.

{5} Defendant filed a motion to quash and dismiss the information, which the district court denied. Thereafter, Defendant entered a conditional plea of no contest to one count of forgery and one count of attempted fraud over $2500. The plea reserved Defendant's "right to appeal all motions heard by [the] trial court." Defendant now appeals from the judgment and sentence entered pursuant to the plea agreement.

## DISCUSSION

### 1. Preservation

{6} Before we begin our discussion of the merits of the appeal, we address the issue of preservation in light of Defendant's apparent attempt to rely on arguments made at the calendaring stage without further briefing. Defendant briefed only the issues relating to the attempted fraud conviction. As to the forgery conviction, his brief asks only "to reverse his conviction for [f]orgery for the reasons stated in the Summary Calendar Notice and in his Docketing Statement."

{7} Once a case is assigned to the general calendar, the appellant must brief all the issues that he or she wishes the court to review. The docketing statement alone does not provide a basis for review of an issue, and issues listed in the docketing statement but not briefed are deemed abandoned. *State v. Gonzales*, 111 N.M. 590, 593–94, 808 P.2d 40, 43–44 (Ct.App.1991) (detailing the requirements of the brief in chief), *modified*

*on other grounds by State v. Dominguez*, 115 N.M. 445, 450, 853 P.2d 147, 152 (Ct.App. 1993). Similarly, once the case has been assigned to the general calendar, previous calendar notices are a nullity and the issues raised by those notices are abandoned unless they are briefed. *Id.* at 594, 808 P.2d at 44.

{8} In the present case, Defendant preserved several issues in the district court through his motion to dismiss, including his argument that the photocopies of the NCRs did not have legal efficacy, as the forgery statute requires. On appeal, Defendant included the legal efficacy issue in his docketing statement, which we cited as the basis for proposed summary reversal of the forgery conviction in our first calendar notice. When the case was subsequently placed on the general calendar and Defendant submitted his brief in chief to this Court, he did not include the legal efficacy issue. Instead, he attempted to bootstrap the arguments made at the calendaring stage into his appeal with the statement quoted above.

{9} Because calendaring notices become a nullity once a case is assigned to the general calendar, this approach to briefing could have resulted in Defendant's abandonment of the legal efficacy argument. *Gonzales*, 111 N.M. at 593–94, 808 P.2d at 43–44. However, this Court can review a question not preserved below if it involves fundamental error or fundamental rights of a party. Rule 12–216(B)(2) NMRA 2004; *State v. Stein*, 1999–NMCA–065, ¶ 9, 127 N.M. 362, 981 P.2d 295. "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997–NMSC–045, ¶ 41, 124 N.M. 55, 946 P.2d 1066. We have held that when a defendant is convicted of an offense based on facts that do not meet the definitions of the elements required for that offense, this constitutes fundamental error. *See Stein*, 1999–NMCA–065, ¶¶ 8–9, 127 N.M. 362, 981 P.2d 295 (allowing for review of a conviction for battery of a household member to determine whether the victim fell within the statutory definition of "household member"). Thus, we will review Defendant's forgery conviction for fundamental error

based on Defendant's contention that his actions did not constitute the elements of this crime as a matter of law.

▇▇▇ {10} The State expresses concern that the issue of preservation is especially critical in this case because Defendant entered a conditional plea that expressly waived his right to appeal any matters not presented in a motion to the trial court. *See State v. Hodge*, 118 N.M. 410, 416–17, 882 P.2d 1, 7–8 (1994) (explaining the steps necessary to reserve an issue for appeal through a conditional plea). We note that Defendant raised the legal efficacy issue to the trial court through his motion to dismiss, and, therefore, our review of this issue does not violate the terms of his conditional plea. As to the other issues relating to the attempted fraud conviction, we view Defendant's submissions below to have raised, if only in a conclusory fashion, each and every issue raised on appeal.

### 2. Forgery

▇▇▇ {11} The New Mexico forgery statute, Section 30–16–10, defines the type of forgery charged in this case as:

> A. falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud[.]

Legal efficacy is an essential element of the forgery offense and a purely legal issue. UJI 14–1643 NMRA 2004 Comm. Commentary. We review the issue of whether an instrument has legal efficacy de novo. *State v. Wasson*, 1998–NMCA–087, ¶ 6, 125 N.M. 656, 964 P.2d 820. In the present case, if the photocopies of the altered NCRs do not have legal efficacy, then Defendant's actions do not constitute forgery as a matter of law, and Defendant's conviction is fundamental error. *See State v. Doe*, 92 N.M. 100, 102, 583 P.2d 464, 466 (1978) (explaining that if the defendant's words and actions did not constitute the offense of disorderly conduct, then his conviction was fundamental error).

▇▇▇ {12} Our courts have defined an instrument with legal efficacy in the context of the forgery statute as "an instrument which upon its face could be made the foundation of liability" and "an instrument good and valid for the purpose for which it was created." *State v. Cowley*, 79 N.M. 49, 52, 439 P.2d 567, 570 (Ct.App.1968). We have also stated that a " 'document required by law to be filed or recorded or necessary or convenient to the discharge of a public official's duties' " meets the forgery requirements. *Wasson*, 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820 (quoting 4 Charles E. Torcia, *Wharton's Criminal Law* § 491, at 94 (15th ed.1996)). However, we have avoided a strictly categorical approach to defining the instruments of forgery, agreeing that " '[n]o definition of forgery can be comprehensive enough to include all the crimes that may be committed by simple use of pen, paper and ink.' " *State v. Nguyen*, 1997–NMCA–037, ¶ 12, 123 N.M. 290, 939 P.2d 1098 (quoting *Muhammad v. Commonwealth*, 13 Va.App. 194, 409 S.E.2d 818, 821 (1991)).

▇▇▇ {13} We begin our application of the law to the present case by observing that the NCRs do not purport to have legal efficacy in and of themselves. An NCR "entail[s] chemically treated paper, and the impact of a typing head or pressure of a pen or pencil on the top sheet, transmitted downward through the copy pages [to] produce[ ] duplicate images on the latter." 5 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 561, at 272 (2d ed.1994). The NCR of a check is non-negotiable and is essentially a record-keeping device by which a person can keep track of the checks he or she writes without entering them in a separate log. Because the NCR is created at the time the check is written, it does not speak to whether a check is tendered, cashed, deposited, returned, or otherwise used. For these reasons, the photocopies of the NCRs that Defendant produced could not on their face "be made the foundation for liability." *See Cowley*, 79 N.M. at 52, 439 P.2d at 570. An NCR is also not "required by law to be filed or recorded" and is completely unrelated to "the discharge of a public official's duties." *See Wasson*, 1998–NMCA–087, ¶ 7, 125 N.M. 656, 964 P.2d 820 (internal quotation marks and citation omitted). An NCR is not necessary to any transaction and creates no obligations on the part of the indicated maker or payee.

*See Nguyen,* 1997–NMCA–037, ¶ 15, 123 N.M. 290, 939 P.2d 1098.

■ {14} In this case, however, Defendant offered the photocopies of the NCRs as evidence that he had written child support checks to his ex-wife. Since Defendant contended that he gave checks to his ex-wife that she never cashed, other evidence of payment by check like a bank record or cancelled check would not have been available had Defendant's contentions been true. Furthermore, Defendant tendered the photocopies to his ex-wife's attorney during the course of pending litigation on his child support obligations. Thus, the State argued at trial, while the NCRs may not have legal efficacy per se, they purport to have legal efficacy in that Defendant could have gained a legal advantage by introducing the copies at trial, creating a delay in the proceedings, or gaining a tactical advantage in settlement negotiations. .

{15} Our case law does not support an interpretation of the legal efficacy requirement that would expand forgery to encompass the falsification or alteration of any item with potential evidentiary value. We have adopted an approach in which "the proper basis for analyzing whether forgery has occurred is the actual role the document plays in the fraudulent transaction between victim and defendant." *State v. Torres,* 2000–NMCA–038, ¶ 10, 129 N.M. 51, 1 P.3d 433. In this case, the NCRs could not have possibly excused Defendant of his child support obligations. Even if authentic, the only potential value of the NCRs would be to prove that Defendant had written checks to his ex-wife. Defendant would still have to establish, at a minimum, that he tendered the checks to his ex-wife in order for his version of events to be true. Furthermore, while we agree with the State that the failure of Defendant's plan does not by itself negate the possibility of a forgery, *see Nguyen,* 1997–NMCA–037, ¶ 14, 123 N.M. 290, 939 P.2d 1098, we note that the potential value of the copies in this case is highly speculative. We hesitate to expand the definition of an instrument purporting to have legal efficacy to include this circumstance.

■ {16} We are also concerned with the ramifications of criminalizing the alteration of an item, the only legal value of which is its potential to be used as corroborating evidence in a legal proceeding. While we strongly disapprove of this type of conduct, we note that there are other sanctions available when a party is untruthful during discovery or at trial. *See* § 30–16–6 (fraud, or attempted fraud in conjunction with NMSA 1978, § 30–28–1 (1963)); Rule 1–037 NMRA 2004 (providing for sanctions against a party who violates discovery rules); *see also Reed v. Furr's Supermarkets, Inc.,* 2000–NMCA–091, ¶¶ 7–8, 129 N.M. 639, 11 P.3d 603 (explaining that dismissal is an appropriate sanction for false answers to interrogatories or depositions); *cf.* Rule 1–011 NMRA 2004 (providing for sanctions against an attorney who submits any pleading, motion, or other paper without the belief that there is good ground to support it); Rule 16–303 NMRA 2004 (providing that a lawyer shall not knowingly introduce false evidence); NMSA 1978, § 30–22–5 (2003) (providing criminal sanctions for tampering with evidence with the intent to interfere in a criminal investigation or prosecution).

{17} As the Supreme Court stated in *State v. Carbajal,* 2002–NMSC–019, 132 N.M. 326, 48 P.3d 64, "Forgery is a crime aimed primarily at safe-guarding confidence in the genuineness of documents relied upon in commercial and business activity." *Id.* ¶ 18 (internal quotation marks and citation omitted). A photocopy of what is essentially a check register is not a check, a receipt, or another type of document that is relied upon in business activity or made the foundation of liability. At most, it is some corroborating evidence of testimony or an assertion that money has been paid.

■ {18} In summary, we do not believe that the element of forgery requiring that the defendant has falsely made or altered an instrument "purporting to have legal efficacy" should be expanded to include instances where the sole legal value of the instrument is its potential use as evidence. We reverse Defendant's conviction for forgery because his conduct does not meet the statutory definition of forgery and is fundamental error.

Because we reverse the conviction, we do not examine the other issues Defendant raises with respect to the forgery conviction.

### 3. Fraud

{19} Defendant challenges his attempted fraud conviction on a number of points. Because the underlying facts are not in dispute, we review Defendant's legal contentions de novo. *State v. Esparza,* 2003–NMCA–075, ¶ 13, 133 N.M. 772, 70 P.3d 762.

{20} First, Defendant argues that he lacked the required specific intent to commit fraud required by the attempt statute. The attempt statute requires "an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." Section 30–28–1. The fraud statute defines fraud as "the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations." Section 30–16–6. "The gravamen of the crime [of attempted fraud] focuses on words or conduct which misrepresented a fact intending to deceive or cheat for the purpose of obtaining an amount in excess of $2500." *State v. Olguin,* 118 N.M. 91, 96, 879 P.2d 92, 97 (Ct.App.1994), *aff'd in part, rev'd in part,* 120 N.M. 740, 906 P.2d 731 (1995).

{21} Here, Defendant's words and conduct included his claim that he had already tendered child support payments to his ex-wife and his offer of the photocopied NCRs to his ex-wife's attorney to bolster that claim. The intent was to evade payment of the amount he owed. If he had succeeded, Defendant would have benefitted by the $3584 that he would not have been forced to pay. The fact that he did not succeed results only in the lessening of the conviction to attempted fraud. It does not show an absence of intent to defraud. There is no error here as a matter of law.

{22} Defendant next contends that he had a valid defense of impossibility because the photocopied NCRs "could not extinguish ex-wife's right to payment of the moneys in question." This is not a correct interpretation of the impossibility doctrine. Our Supreme Court has explained that criminal liability for attempt is appropriate when the defendant has done everything in his power to commit the crime but did not complete the crime due to a factual impossibility. *State v. Lopez,* 100 N.M. 291, 292, 669 P.2d 1086, 1087 (1983). "When the objective is clearly criminal, impossibility is not a proper defense." *Id.* at 293, 669 P.2d at 1088. Such was the case here. Although, as discussed above, the NCRs may not have been enough to relieve Defendant of his child support obligations, that does not alter the fact that Defendant produced the NCRs with the intent to achieve just that. As with Defendant's arguments regarding specific intent, the fact that he was prevented from achieving his goal lessens the conviction to an attempt, but it does not create the type of impossibility that precludes criminal liability.

{23} Next, Defendant argues that reliance is an essential element of fraud that was missing in this case. Accordingly, he argues that the conviction was improper as a matter of law. Although reliance is an element of fraud, UJI 14–1640(2) NMRA 2004, it is important to note again that Defendant was convicted of attempted fraud. The fact that he did not succeed in inducing reliance on the photocopied NCRs is not the issue. The fact remains that he intended to induce reliance on them, as an attempt conviction requires. Along the same lines, Defendant argues that another essential element of fraud is missing in that his actions do not constitute attempted fraud because owed child support payments do not constitute the property of another. This is also unpersuasive because if Defendant had been successful, his actions could have taken away both his ex-wife's child support, as well as his ex-wife's right to child support, which are things of value that belonged to ex-wife for the benefit of her children. In the context of attempt, this is all that the fraud statute requires.

{24} Finally, Defendant argues that the State is barred from prosecuting attempted fraud that takes place during a judicial proceeding under the case of *State v. Kelly,* 27 N.M. 412, 202 P. 524 (1921). In that case, the defendant presented a falsified bond to a state loan board that had been

created to manage the debts and loans of the State of New Mexico that had been accrued during the territorial era. *Id.* at 414–15, 202 P.2d at 525. Defendant relies on the Court's following statement:

> [I]f the board of loan commissioners of the state of New Mexico constituted a court, and the presentation of the claim to such board and the proceedings had before such board upon such claim constituted a judicial inquiry and resulted in a judicial judgment or decree, there could be no prosecution for false pretenses made to such board in regard to any claim, and that the remedy would be a prosecution for perjury instead.

*Id.* at 417, 202 P.2d at 526. This hypothetical statement is inapplicable to the present case. Here the photocopied NCRs were presented to an attorney during discovery. They were not presented to a court and did not form the basis of a judicial judgment or decree. A prosecution for perjury under our modern perjury statute, NMSA 1978, § 30–25–1 (1963), which requires a false statement under oath, would not have been appropriate.

We are unpersuaded by Defendant's assertion that *Kelly* bars the current conviction. We make no comment on whether a prosecution for attempted fraud is permissible in cases where a perjury prosecution is possible because we are not presented with the facts to make such an assessment.

## CONCLUSION

{25} We reverse Defendant's conviction for forgery because the instrument that he altered did not purport to have legal efficacy. We affirm Defendant's conviction for attempted fraud.

{26} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and IRA ROBINSON, Judges.