This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42284**

**JENNIFER REGAN o/b/o**
**AUBRIE R.,**

      Petitioner-Appellee,

v.

**JARROD LOWREY,**

      Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Amber Chavez Baker, District Court Judge**

New Mexico Legal Aid
Edna Frances Sprague
Lucrecia Jaramillo
Albuquerque, NM

for Appellee

Jarrod Lowrey
Rio Rancho, NM

Pro Se Appellant

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** The opinion filed on June 25, 2025, is hereby withdrawn, and this opinion is substituted in its place, following Respondent's timely motion for rehearing, which this Court denies.

**{2}** Respondent Jarrod Lowrey appeals the district court's decision granting the petition for a protective order filed by Petitioner Jennifer Regan on behalf of her minor

daughter (Child), under the Family Violence Protection Act (FVPA), NMSA 1978, §§ 40-13-1 to -13 (1987, as amended through 2019). Not persuaded by Respondent's arguments, we affirm.

## DISCUSSION

{3}     Respondent raises thirteen issues in his initial brief and requests that we review seven additional arguments that were listed in his docketing statement, as well as additional arguments made for the first time in his reply brief.

{4}     We note at the outset that we employ a presumption of correctness in the rulings of the district court, and the burden is on the appellant to clearly demonstrate error. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063. Failure to provide this Court with authority demonstrating the error of the trial court below may result in affirmance. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists." (citation omitted)).

{5}     As relevant here, the appellant must brief all the issues that they wish the court to review in their initial brief. *See State v. Cearley*, 2004-NMCA-079, ¶ 7, 135 N.M. 710, 92 P.3d 1284. The docketing statement does not provide a basis for review of an issue once a case is placed on the general calendar for briefing, and issues listed in the docketing statement that are not briefed are deemed abandoned. *See id.* Therefore, we will not supplement Respondent's briefing with the arguments in his 151-page docketing statement, as he requests.

{6}     We address each of the arguments made in Respondent's initial brief, as supplemented by his reply brief.

## I.     The Ten-Day Hearing Provision Is Not Jurisdictional

{7}     Respondent asserts that the protective order entered by the district court is void for lack of jurisdiction because the district court did not conduct a hearing within ten days of its order granting temporary protection, as required by Section 40-13-4(A)(3) (stating that the court "shall . . . within ten days after the granting of a temporary order of protection, hold a hearing on the question of continuing the order"). It is not disputed that eight months intervened between the grant of the temporary protective order and the hearing to continue the protective order. We review Respondent's challenge to the district court's jurisdiction de novo. *See State v. Chavarria*, 2009-NMSC-020, ¶ 11, 146 N.M. 251, 208 P.3d 896.

{8}     Section 40-13-4(A)(3) states that the district court "shall" conduct the hearing within ten days of the issuance of a temporary protective order. "Generally, the use of the word 'shall' imposes a mandatory requirement." *N.M. Dep't of Health v. Compton*, 2000-NMCA-078, ¶ 11, 129 N.M. 474, 10 P.3d 153, (text only) (citation omitted), *aff'd*,

2001-NMSC-032, ¶¶ 28, 33, 131 N.M. 204, 34 P.3d 593. However, "not all mandatory requirements are jurisdictional." *Stephens v. N.M. Transp. Dep't*, 1987-NMCA-095, ¶ 9, 106 N.M. 198, 740 P.2d 1182. The distinction is important: "[i]f the statutory requirement is jurisdictional, outright dismissal is the proper remedy because the court is effectively divested of jurisdiction." *Compton*, 2000-NMCA-078, ¶ 12. "If, however, the statutory requirement is mandatory but not jurisdictional, the proper analysis for dismissal is whether the delay prejudiced [the r]espondent." *Id.*

{9} A mandatory requirement is jurisdictional only if it is "essential to the proper operation of the statute." *Id.* ¶ 13. We look, therefore, to legislative intent to determine the purpose of the statute and then examine whether the timing of the hearing at ten days after the grant of a temporary protective order is essential to the achievement of the statutory purpose. In its opinion in *State v. Gonzales*, this Court held that the "[t]he purpose and intent behind the FVPA is to give victims of domestic abuse special protections because they are especially vulnerable." 2017-NMCA-080, ¶ 24, 406 P.3d 534. We noted in *Gonzales* that the Legislature extended the FVPA's special protections to victims of domestic violence and also to victims of sexual assault or stalking, even when those crimes occur between nonhousehold members. *See id.* ¶ 20 (citing Section 40-13-2(D)(1)). The FVPA provides protection by creating an expedited procedure for victims of "domestic abuse," as that term is defined in the statute (including nonhousehold members who are victims of sexual assault), focusing on court-issued protective orders and the enforcement of those orders. *See Nguyen v. Bui*, 2023-NMSC-020, ¶¶ 2-4, 536 P.3d 482.

{10} We look next at whether the timing of the hearing to continue a temporary protective order issued by the court is "essential to the proper operation of the [FVPA]." *Compton*, 2000-NMCA-078, ¶ 13. The ten-day requirement for a hearing is not directly tied to the primary statutory purpose of providing expedited protection to victims of domestic abuse. The statute does not provide that the temporary protective order expires and cannot be renewed if that hearing is not timely held, leaving the victim without protection, nor is dismissal of the petition required, as it sometimes is in other jurisdictions. *See, e.g.*, Ga. Code Ann. § 19-13-3(c) (2018) (stating that if a hearing is not held within 30 days of the filing of a petition for protective order, "the petition shall stand dismissed").

{11} We conclude that the ten-day time period to conduct an evidentiary hearing is not essential to the operation of the FVPA—it is neither essential to the protection of the victims of domestic abuse (the primary purpose of the statute), nor has Respondent established that the timing requirement is essential to protect the due process rights of the respondent, as we explain in addressing Respondent's due process claim.

{12} Respondent asserts that, even if the hearing deadline is not jurisdictional, he was denied due process by the delay in conducting the hearing. Respondent has provided no argument and cited no authority to support his claim that holding the hearing ten days after the temporary protective order was granted, necessarily without deciding the many motions Respondent himself filed and without allowing time for responses to

Respondent's extensive discovery requests, was the procedure required by due process, nor has he explained how he was prejudiced by this delay. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. Due process is a flexible right, and the procedures required to satisfy due process require the court to balance interests and analyze the procedures best-suited to those interests. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). To determine whether a party was afforded adequate procedural protections, we apply the balancing test announced in *Mathews v. Eldridge*, 424 U.S. 319 (1976), taking into account "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Gonzalez v. Watson*, 2024-NMCA-033, ¶ 18, 545 P.3d 1190 (alteration, internal quotation marks, and citation omitted). Respondent has not addressed these three factors, and, therefore, has not demonstrated that the procedures afforded by the district court denied him due process. Nor has he shown how the delay, which allowed him to proceed with his many motions and detailed discovery, prejudiced him. We, therefore, conclude that Respondent has not met the burden on appeal to demonstrate a denial of due process, nor has he shown prejudice resulting from the delay in the trial. *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8 (holding that the burden is on the appellant to clearly demonstrate error in the district court proceedings).

## II.     Double Jeopardy Does Not Apply to This Civil Proceeding

**{13}**     Respondent claims that this FVPA proceeding violated his right to be free from double jeopardy under the Fifth Amendment to the United States Constitution. He asserts that a prior investigation by law enforcement into allegations of sexual abuse of Child (without charges being filed) make this FVPA case a "successive prosecution," putting him twice in jeopardy for the same offense, contrary to the Fifth Amendment. We do not agree.

**{14}**     Double jeopardy generally applies only in the criminal context. Jeopardy attaches "when the jury is empaneled and sworn" in a criminal prosecution. *State v. Roybal*, 2006-NMCA-043, ¶ 22, 139 N.M. 341, 132 P.3d 598 (internal quotation marks and citation omitted); *see also State ex rel. Schwartz v. Kennedy*, 1995-NMSC-069, ¶ 23, 120 N.M. 619, 904 P.2d 1044 ("[J]eopardy does not attach in proceedings in which only a civil sanction can be imposed, because the risk to which the [Double Jeopardy Clause] refers is not present in proceedings that are not essentially criminal." (internal quotation marks and citation omitted)).

**{15}**     Moreover, "[the L]egislature may impose both a criminal and a civil sanction in respect to the same act or omission without violating the Double Jeopardy Clause." *State ex rel. Schwartz*, 1995-NMSC-069, ¶ 23 (internal quotation marks and citation omitted). Our Legislature has specifically stated its intent that "remedies provided in the

[FVPA] *are in addition to* any other civil or criminal remedy available to the protected party or the state." Section 40-13-6(H) (emphasis added); *see, e.g.*, *State v. Gonzales*, 1997-NMCA-039, ¶¶ 2-5, 20, 123 N.M. 337, 940 P.2d 185 (stating that criminal prosecution for stalking and harassment arising from a violation of FVPA protective order did not constitute double jeopardy).

**{16}** We lastly note that Respondent relies on our Supreme Court's decision in *State v. Nunez*, 2000-NMSC-013, 129 N.M. 63, 2 P.3d 264, to argue that double jeopardy may, in limited circumstances, apply in the civil context. *Nunez*, addresses a highly unusual procedure where forfeiture of property (a vehicle) for driving while intoxicated, is closely tied to a criminal proceeding involving the same conduct that supports the forfeiture. *Id.* ¶¶ 3-11. The *Nunez* Court explained that the civil forfeiture in that case was a statutory sanction for the commission of illegal acts that completely divested ownership of property without compensation, and, importantly, did so for punitive reasons. *Id.* ¶¶ 32. 46, 51-53, 62-93. Respondent does not apply the analysis that is described in *Nunez* to demonstrate how the FVPA imposes punishment like that identified in *Nunez* for the purposes of double jeopardy analysis. *See id.* ¶ 46. We note that *Nunez* has not been extended beyond the unique, forfeiture proceeding in that case in the twenty-five years since it was decided. Respondent provides no argument and no authority supporting the extension of the analysis in *Nunez* to the FVPA when he has not been convicted of any crime, and has been subjected only to remedial conditions designed to protect Child. We, therefore, do not consider this argument further.

## III.    Neither Claim Nor Issue Preclusion Bars This Proceeding

**{17}** Respondent also claims that the district court's dismissal of earlier petitions for a protective order, filed by Petitioner against Respondent on her own behalf rather than on Child's behalf, preclude the district court's consideration of this petition. Respondent's only citation to authority is again to the Fifth Amendment Double Jeopardy Clause. In the present context, however, claim preclusion or issue preclusion are the civil law doctrines that would prevent repeated filings if the elements of either one of those doctrines were satisfied. The facts alleged by Respondent concerning the prior petitions filed by Petitioner, however, do not support the application of either claim preclusion or issue preclusion.

**{18}** Claim preclusion (or res judicata) bars only claims raised in a subsequent proceeding "*by the same plaintiff* based on the same transaction" and where a final valid judgment has been entered "*on the merits*" in the prior proceeding. *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 66, 148 N.M. 106, 231 P.3d 87 (emphasis added). To the extent Petitioner previously raised abuse of Child by Respondent in previous petitions brought on her own behalf, claim preclusion does not apply because the parties are not the same—the petition in this case was filed on behalf of Child—and because the prior case was not resolved with a final judgment on the merits—it was dismissed "without prejudice" so that the issues raised could be heard in a pending domestic relations case. *Cf. Turner v. First N.M. Bank*, 2015-NMCA-068, ¶ 8, 352 P.3d 661 (evaluating the circumstances to determine whether a dismissal without prejudice

was "on the merits" when the case was dismissed for failure to state a claim after full briefing and a hearing on the sufficiency of the complaint).

**{19}** Issue preclusion (or collateral estoppel) also does not apply. *See Reeves v. Wimberly*, 1988-NMCA-038, ¶ 7, 107 N.M. 231, 755 P.2d 75. Issue preclusion requires that a party "establish the existence of four elements: (1) the parties are the same or in privity with the parties in the original action; (2) the subject matter or cause of action in the two suits are different; (3) the ultimate facts or issues were actually litigated; and (4) the issue was necessarily determined." *Id.* ¶ 8. Because Respondent does not establish that the allegations of domestic abuse of Child were actually litigated and necessarily determined in the prior proceedings he relies on, issue preclusion does not apply. *See id.* ¶ 15 (providing that the party "invoking collateral estoppel has the burden to introduce sufficient evidence for the court to rule whether the doctrine is applicable").

## IV.    The District Court Correctly Decided That IPRA's Law Enforcement Exception to Disclosure Did Not Require the Court to Grant Respondent's Motion to Quash

**{20}** Respondent argues that the Inspection of Public Records Act (IPRA), NMSA 1978, § 14-2-1.2(A)(1)(a) required the district court to grant Respondent's motion to quash Petitioner's subpoena for law enforcement records and for the testimony of law enforcement witnesses. Respondent argues that Petitioner subpoenaed the reports of law enforcement's investigation into allegations that Respondent had sexually abused Child, and that because Respondent had not been charged, Section 14-2-1.2(A)(1)(a) of IPRA requires the district court to quash the subpoena. Respondent is mistaken.

**{21}** Our Supreme Court has held that the IPRA law enforcement exception to public disclosure does not create an evidentiary privilege. *See Estate of Romero ex rel. Romero v. City of Santa Fe*, 2006-NMSC-028, ¶ 14, 139 N.M. 671, 137 P.3d 611 (concluding that the Court is unable to recognize a law enforcement privilege). The Court in *Romero* adopts a limited immunity from disclosure by a law enforcement agency in discovery, subject to a balancing test. *Id.* ¶ 22. The protection from disclosure adopted by our Supreme Court extends the law enforcement agency's protection from disclosure of certain documents in response to an IPRA request to the law enforcement agency's response to discovery in civil litigation. When a law enforcement agency determines it is necessary to protect information sought in discovery, it must request a protective order from the district court. The district court must then balance the interests asserted by law enforcement against the litigants' interests in having "their disputes decided on relevant and material evidence." *Id.* ¶ 19. No right is vested in a party to the civil litigation to prevent the law enforcement agency from disclosing information that the agency determines can be disclosed without impeding an investigation. Indeed, if law enforcement objects to disclosure, *Romero* encourages the litigant seeking the discovery to attempt to obtain the material through a different route, and makes clear that, once obtained, the records or testimony are not protected by an evidentiary privilege.

**{22}** Respondent provides no authority to support his argument that the district court was required to quash Petitioner's subpoena at Respondent's request when the law enforcement agency did not seek protection from production of the documents and witnesses at issue. We therefore do not consider Petitioner's claim further.

## V. Sufficient Evidence Supports the Judgment

**{23}** Respondent, for the first time in his reply brief, challenges the sufficiency of some of the evidence that he sexually molested Child. Respondent argues that the witnesses were not credible, made some admissions favorable to him, offered irrelevant testimony, and provided hearsay testimony. Respondent's arguments require us to reweigh the evidence and make credibility determinations that are reserved for the finder of fact. *See Skeen v. Boyles*, 2009-NMCA-080, ¶ 37, 146 N.M. 627, 213 P.3d 531 (recognizing that "the district court heard conflicting evidence on some matters, but we defer to its determinations of ultimate fact, given that we lack opportunity to observe demeanor, and we cannot weigh the credibility of live witnesses"). He makes no argument as to why the district court abused its discretion in admitting this evidence. We therefore do not consider this argument further.

**{24}** In his brief in chief, Respondent challenges the sufficiency of the evidence to support the district court's finding that he committed "domestic abuse" under the FVPA. Although framed as a sufficiency of the evidence argument, Respondent actually raises an issue of law. His argument turns on his claim that there must be proof of a criminal conviction for sexual assault to prove domestic abuse by sexual assault under the FVPA. We do not agree.

**{25}** Respondent appears to misconstrue the provisions of the FVPA that allow victims of domestic abuse to seek assistance from law enforcement and to file a criminal complaint as well as a FVPA civil proceeding construing them to impose a requirement that the victim first obtain a conviction. The requirement in Section 40-13-7(E), for example, that a judgment of conviction note whether it "results from the commission of domestic abuse" does not *require* such a conviction for a victim to invoke the protection of the FVPA. Instead, an order of protection is based on either a "finding [by the district court] that domestic abuse has occurred" or a stipulation. *See* § 40-13-5(A). We do not agree with Respondent that this language requires a conviction of the respondent in order to obtain a protective order under the FVPA. The district court, therefore, did not err in continuing the protective order based on the extensive witness testimony in the record related to acts of sexual assault of Child by Respondent, which the court found credible.

## VI. The Statutory Requirements for a Petition Were Met

**{26}** Respondent argues that a petition under the FVPA for an order of protection must be "written" by the victim. We do not agree. The statutory language requires, in relevant part, that the petition "shall be made under oath." Section 40-13-3(B). That requirement was satisfied here. There is no requirement that the victim themself write

the petition without assistance—only that they review it and verify the accuracy of the allegations in the petition under oath. Petitioner satisfied that requirement.

## VII.    Respondent Need Not Be a Household Member

**{27}**    The household member relationship requirement of the FVPA does not apply, by the plain terms of the statute, when the "domestic abuse" alleged is "an incident of stalking or sexual assault." Section 40-13-2(D)(1). "Domestic abuse" is defined in relevant part as either "sexual assault whether committed by a household member or not" or by specific acts committed by a household member. Section 40-13-2(D). Respondent contends that because the sexual assault allegations were unproven, Petitioner was required to demonstrate—and did not—that Respondent was a household member. Having already determined that the evidence supported the claim for sexual assault, Petitioner was not required to establish that Respondent was a household member to Child. We therefore reject Respondent's argument.

## VIII.    The District Court Did Not Err in Delaying Resolution of Respondent's Motion to Dismiss

**{28}**    The district court delayed reconsideration of Respondent's motion to dismiss because Respondent had filed an interlocutory appeal to this Court asking this Court to review the district court's denial of that motion. Respondent sought review by this Court of the district court's decision that it had jurisdiction to proceed, that double jeopardy did not bar this proceeding, that neither issue preclusion nor collateral estoppel applied, that Petitioner's failure to write the petition herself did not invalidate the petition, and that the temporary order posed an unconstitutional prior limitation on Respondent's speech: issues again raised on appeal. Given that Respondent's interlocutory appeal was not resolved until February 6, 2024, and the mandate from this Court did not issue until March 21, 2024, delay of a decision in the district court on reconsideration of these issues was reasonable.

**{29}**    Although the district court heard and resolved numerous motions on March 15, 2024, after the Court of Appeals decision, the district court again delayed reconsideration on the issues raised in Respondent's motion to dismiss, noting that many issues in the motion were fact dependent. After this ruling, the record shows that the parties proceeded to conduct discovery and prepare for trial, focusing on pretrial motions. Respondent moved to compel discovery from Petitioner, and when the Court granted Respondent's motion but further delayed the hearing to accommodate discovery, Respondent asked the district court to certify not only the propriety of the additional delay but also the questions he had previously attempted to raise on interlocutory appeal so he could again seek a decision from this Court. The district court refused to permit an additional interlocutory appeal—something that would have further delayed the trial.

**{30}**    Ultimately, the district court heard evidence and resolved the issues raised by Respondent's motion to dismiss in its final order. Those issues are now before us on

appeal, and we have considered them "based upon both the pleadings and the evidence elicited at trial as they became merged into the judgment." *See Leithead v. City of Santa Fe*, 1997-NMCA-041, ¶ 6, 123 N.M. 353, 940 P.2d 459. We see no reason to address Respondent's claim of delay, raised again on appeal, where delay is not by itself a basis for reversal; Respondent has received full consideration of his motion in the district court and on appeal, and there is no remedy available on appeal for the delay.

## IX. The District Court Had Authority to Dismiss Some of the Allegations Before Trial

**{31}**    Respondent claims that the district court erred in granting Petitioner's request to limit the trial on the merits to the sexual assault of Child and to dismiss the other issues alleged in the petition. Respondent contends that he was not on notice from the language of the petition that the primary allegation was sexual assault of Child. We do not agree that the petition and the proceedings following the petition were inadequate to put Respondent on notice. Although the petition includes other claims, including harassment and stalking, the central claim is plainly sexual abuse of Child. **{32}**    The sole authority cited by Respondent in support of his argument are out-of-state cases. These cases address the failure of a petition to provide sufficient notice that an *additional* issue, not included in the petition, will be considered at trial. In this case, Respondent was on notice of the sexual assault claim from the outset of the case and aware that it was to be either the primary claim or a very important claim at trial. Most of the discovery was addressed to this claim. He does not explain how he was prejudiced by Petitioner dismissing other claims against him and focusing on this single claim. We, therefore, see no error in the district court's decision allowing dismissal of some claims before trial.

**{33}**    Because the claims in the Petition alleging harassment by text, phone, and other communications were dismissed before trial, we do not consider Respondent's argument that the continuing order of protection is a prior restraint on his speech in violation of the First Amendment to the United States Constitution.

## X.    Respondent's Claims Concerning the Forensic Interview Are Undeveloped

**{34}**    Respondent asserts in his initial brief that he "was unlawfully denied the forensic interview of [Child]" and that he objected at trial that the interviewer's testimony violated the best evidence rule. These statements represent the totality of Respondent's argument concerning lack of access to the forensic interview. Respondent's sole citation is to the best evidence rule. Because this argument is undeveloped, unclear, and lacking supporting authority, we are not able to review it on appeal, and will not consider it further. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

## XI.    Respondent's Claim of Perjury by Petitioner

**{35}** Respondent claims that a single statement in the petition is not true and amounts to perjury. Respondent does not cite to evidence in the record on this issue, explain how the allegedly perjured statement was material to the issues on appeal, or describe or cite to the ruling of the district court. This Court is an appellate court. We review the decisions of lower courts on the facts and law presented in that court. This argument, made without any reference to the findings of the district court we are being asked to review, is not properly before us. *See State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 21, 145 N.M. 769, 205 P.3d 816 (stating that appellate courts are not fact-finding bodies).

**CONCLUSION**

**{36}** Having carefully reviewed Respondent's arguments, we are not persuaded that the district court erred. We therefore affirm.

**{37}   IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**KATHERINE A. WRAY, Judge**